UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:12-CR-48-CHB-HAI |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| JASON W. GRAVES, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral, considers reported supervised release violations by Defendant Jason Graves. *See* D.E. 40 at 2. District Judge Van Tatenhove entered a judgment against Defendant in February 2014, following Defendant's guilty plea to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). D.E. 39. Defendant was originally sentenced to sixty months of imprisonment and a three-year term of supervised release. *Id.* at 2–3. On August 8, 2018, Defendant was released from the custody of the Bureau of Prisons ("BOP") to begin service of his term of supervised release.

I.

On May 21, 2019, the United States Probation Office ("USPO") issued a Supervised Release Violation Report ("the Report") charging Defendant with four violations. The USPO then secured a warrant from Judge Van Tatenhove for Defendant's arrest. *See* D.E. 40; *see also* D.E. 42. On June 20, 2019, and August 1, 2019, the USPO issued two addenda to the Report, charging Defendant with three additional violations.

According to the Report, on April 9, 2019, U.S. Probation Officer Scott Greiwe contacted Defendant at his reported address for the purpose of obtaining a urine specimen for drug testing

and to discuss substance-abuse treatment. Defendant's specimen tested negatively for the presence of any controlled substance. At that time, Officer Greiwe reminded Defendant that he was required to attend outpatient substance-abuse treatment sessions as provided by Cumberland River Behavioral Health. The Report notes that Defendant kept an appointment with his psychiatrist on April 8, 2019, in order to get his prescribed psychotropic medication, but that he had failed to attend a substance-abuse counseling session since December 21, 2018.

On April 19, 2019, Officer Greiwe attempted to contact Defendant at his residence. Defendant was not home, but his mother was. Officer Greiwe asked Defendant's mother to have Defendant call Officer Greiwe upon his return to discuss his treatment. On May 2, Officer Greiwe attempted again to contact Defendant at his residence, but nobody was home. Officer Greiwe left a card on Defendant's door directing him to report to the probation office on May 6 at 10:00 a.m. Defendant did not report to the office as directed on that date.

On May 7, Officer Greiwe traveled to Defendant's residence again and made contact with Defendant's mother, who told Officer Greiwe that Defendant was not there and that he was not currently living at the reported address. According to Defendant's mother, Defendant was not working and had not been to his reported address since May 2. Further, Officer Greiwe observed that the card he had left for Defendant on May 2 was in the bedroom that appeared to contain Graves's belongings. Officer Greiwe left an additional card on the bed for Defendant directing him to report to the probation office on May 13 at 9:00 a.m.

On May 8, Officer Greiwe contacted The Job Shop, and was informed that Defendant was released from his position at the Laurel Cookie Factory on April 17, 2019, due to lack of attendance. The Job Shop further represented that, although other placements had opened up, staff at The Job Shop had been unable to contact Defendant.

On May 16, Officer Greiwe and Supervising U.S. Probation Officer Deana Kincer contacted Defendant's mother at his reported address. Defendant's mother stated that she had not seen Defendant in several days and that he had not stayed at the home in a couple of weeks. Defendant's mother said that she was unaware of his whereabouts and had many of his belongings packed in bags on the front porch. Further, Defendant's mother indicated that she told him Officer Greiwe was attempting to contact him the last time she saw him.

According to the Report, as of the date of the Report, the USPO had no contact with Defendant since April 9, 2019. And, in addition to the attempts noted above, Officer Greiwe attempted to contact Defendant by his reported telephone number numerous times, but those calls were unsuccessful.

Based on the conduct discussed above, including that Defendant never notified the USPO of being terminated from his employment or of his change in residence, the Report first alleges that Defendant violated the condition of his supervised release that states: "The defendant shall notify the probation officer at least ten days prior to any change in residence or employment." This is a Grade C violation. *See* U.S.S.G. § 7B1.1(a)(3).

Second, because Defendant's whereabouts were unknown to the USPO, the Report alleges that he violated the condition of his supervised release that states: "The defendant shall permit the probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer." This is a Grade C violation. *See id.*

Relatedly, because Defendant had not submitted a truthful and complete monthly supervision report to the USPO since January 28, 2019, the Report alleges that he violated the condition of his supervised release that states: "The defendant shall report to the probation officer

3

in a manner and frequency directed by the court or probation officer." This is a Grade C violation. *See id.*

Finally, because Defendant had not attended a substance-abuse treatment session since December 21, 2018, the Report alleges that Defendant violated the condition of his supervised release that states: "The defendant shall participate in a substance abuse treatment program and shall submit to periodic drug and alcohol testing at the direction and discretion of the probation officer during the term of supervision. Said program may include one or more cognitive behavioral approaches to address criminal thinking patterns and antisocial behaviors. The defendant shall pay for the cost of treatment services to the extent he is able as determined by the probation officer." This is also a Grade C violation. *See id.*

The addenda to the Report charge additional fifth, sixth, and seventh violations of Defendant's conditions of supervision. According to the June 20, 2019 Addendum, after Defendant's release from custody after the hearing held on June 18, 2019, Officer Greiwe instructed Defendant to report to the USPO on June 20, 2019, and to remain at his sister's residence. Defendant failed to report to the USPO on June 20, 2019, and, after learning Defendant had absconded, Officer Greiwe contacted Defendant's sister. Defendant's sister reported to Officer Greiwe that Defendant tore through a wall in her home and stole $30,000 worth of firearms, all of her jewelry, and a rare coin collection before stealing a 2012 Chevrolet Silverado and leaving her home. The fifth violation alleges that Defendant violated the condition of his supervision that states: "The defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer." This is a Grade C violation. U.S.S.G. § 7B1.1(a)(3). As to the sixth violation, the June 20, 2019 Addendum alleges that Defendant violated the condition of his supervised release that states: "The defendant shall answer truthfully all inquiries by the probation

4

officer and follow the instructions of the probation officer," for failing to remain at his sister's residence as directed. This is also a Grade C violation. *See id.*

According to the August 1, 2019 Addendum to the Report, Defendant was indicted in this District on July 25, 2019, in case number 6:19-CR-49-CHB, for a violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm. Thus, the seventh violation alleges that Defendant violated two conditions of his supervised release that state: "The defendant shall not commit another federal, state, or local crime," and "the defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon." This is a Grade B violation. U.S.S.G. § 7B1.1(a)(2).

## II.

The Court conducted an initial appearance on the May 21, 2019 Report pursuant to Federal Rule of Criminal Procedure 32.1 on June 7, 2019. D.E. 44. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of his right to a preliminary hearing. *Id.* At that time, the United States made an oral motion for detention; Defendant requested release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required. *Id.*

At the final hearing on June 11, 2019, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. D.E. 45. Defendant waived a formal hearing and stipulated to violations #1-4 set forth in the Report. *Id.* The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id.* The hearing was continued to June 18, 2019. *Id.*

During the final hearing on June 18, 2019, the Court heard from counsel and Defendant regarding the sentence to be imposed. Given the severity of Defendant's mental health issues and

5

the fact that they had never been treated, the undersigned continued the final hearing for eight weeks and released Defendant to live with his sister to allow him time to participate in mental health treatment. D.E. 46. Subsequently, on June 20, 2019, the first Addendum to the Report was issued and another warrant was secured for Defendant's arrest. *See* D.E. 47. The second Addendum to the Report was issued on August 1, 2019. Defendant was arrested on August 28, 2019. D.E. 55. The Court conducted an initial appearance on the addenda on September 23, 2019. D.E. 54. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of his right to a preliminary hearing on violations #5-7. *Id.* Defendant was remanded to custody. *Id*.

At the final hearing on November 14, 2019, Defendant was again afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. D.E. 56. Defendant waived a formal hearing and stipulated to violations #5-7 set forth in the addenda. *Id*. The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made. *Id*. The Court also found the stipulation to be consistent with the advice of counsel. *Id*.

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant's stipulation permits the Court to find that he engaged in conduct that is, at worst, a Grade B violation under the Guidelines. *See* U.S.S.G. § 7B1.1(a)(2).

During the final hearing, the parties presented their recommendations as to the appropriate term of imprisonment and supervised release. The government argued for a twenty-four-month term of incarceration followed by twelve months of supervised release. Counsel for Defendant argued for a period of incarceration at the low-end of the Guidelines Range.

The government's argument emphasized the nature and circumstances of the original offense (felon in possession of a firearm) and the nature and circumstances of the violations contained in the addenda, specifically that Defendant was again in possession of firearms despite his status as a convicted felon. The government characterized the current conduct as especially egregious given the fact that the victim is Defendant's sister and he committed both theft and property damage. Then the government focused on Defendant's breach of the Court's trust in what it characterized as a flagrant misrepresentation to the Court by Defendant as to his intentions upon his release after the June 18, 2019 final hearing was continued. Additionally, the government noted that Defendant's criminal behavior is likely caused by his untreated mental health issues and argued that, whatever the cause of his behavior may be, Defendant is unpredictable and a grave danger to the public. The government requested that the term of incarceration imposed in this case be served consecutively to the term of incarceration imposed in Defendant's pending case in this District under U.S.S.G. § 7B1.3(f). This section is inapplicable at this point given that Defendant is not presently serving a sentence of imprisonment.[1] The Court noted that Defendant is a suspect in a criminal investigation into several robberies outside of this District and the government informed the Court that it was aware of the investigation, but that it was basing its recommendation solely on the conduct charged in the Report and addenda.

Counsel for Defendant explained that, when she initially represented Defendant for his underlying conviction, she knew then that his criminal history was motivated by his mental health issues, which have never been adequately treated. Additionally, counsel explained that Defendant

---

[1] In the commentary to U.S.S.G. § 7B1.3, application note four provides that the Commission recommends that "any sentence of imprisonment for a criminal offense that is imposed after revocation of . . . supervised release be run consecutively to any term of imprisonment imposed upon revocation." U.S.S.G. § 7B1.3 cmt. n.4. Thus, District Judge Boom will need to assess whether the sentence should be consecutive at the sentencing in case number 6:19-CR-49-CHB.

7

had begun to develop a substance abuse problem at the beginning of his term of supervised release, and that an ex-girlfriend had manipulated Defendant, triggering the violation conduct. Counsel requested that Defendant participate in substance abuse and mental health treatment and further requested that, given the lengthy sentence he faces in his pending criminal case, the district judge consider running the sentences concurrently. Counsel explained that Defendant's substance abuse and mental health issues guided the request for a sentence at the low-end of the Guidelines Range. Counsel informed the Court that Defendant knew he breached the Court's trust and that he was sorry for his conduct. Defendant then addressed the Court directly and apologized for all of his actions.

### III.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction for possession of a firearm by a convicted felon pursuant to 18 U.S.C. § 922(g)(1) is a Class C felony. *See* 18 U.S.C. § 922(g)(1); *see also* 18 U.S.C. § 3559(a)(3). For a Class C felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e)(3). Relatedly, for this offense, the maximum amount of supervised release the Court may impose is three years, minus any revocation term of imprisonment. *See* 18 U.S.C. § 3583(b)(2), (h).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are

8

merely advisory' and need only be considered by the district court before sentence is imposed.") (internal citation omitted). The Guidelines also instruct that, "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b).

Under U.S.S.G. § 7B1.1(a), Defendant's admitted conduct qualifies as a Grade C violation with respect to the first six violations and a Grade B violation with respect to the seventh violation. Given Defendant's criminal history category of VI (the category at the time of his conviction in this District) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is twenty-one to twenty-seven months. *See* U.S.S.G. § 7B1.4(a). However, given the maximum revocation sentence provided under 18 U.S.C. § 3583(e)(3), the range becomes twenty-one to twenty-four months. *See* 18 U.S.C. § 3583(e)(3). Both parties agreed to this calculation of the range.

IV.

The Court has evaluated the entire record, including the Report and the addenda and their accompanying documents, and Defendant's underlying judgment and sentencing materials. The Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the § 3583(e) analysis. Likewise, the parties addressed the statutory factors in making their sentencing recommendations to the Court at Defendant's final hearing. Through its consideration, the Court will recommend that Defendant's supervision be revoked and that he be sentenced to a twenty-four-month term of imprisonment followed by twelve months of supervised release.

Concerning the nature and circumstances of the underlying offense, Defendant was convicted of being a felon in possession of a firearm. Violations five through seven include

conduct that involved Defendant tearing through a wall in his sister's home to steal firearms, jewelry, and a valuable coin collection.  It is striking to the Court that the conduct underlying Defendant's original conviction is repeated here and that the victim of the crime is his sister.  There is no doubt that Defendant is a dangerous criminal and a risk of continued criminal behavior.  This is especially so given Defendant's criminal history category of VI.

The Court is sympathetic to Defendant's mental health issues and agrees with the parties that his mental health is likely the reason for his criminal behavior.  His release after stipulating to the first four violations was designed to ensure mental-health treatment, and the Court relied upon his declared intention to comply.  However, despite Court intervention, Defendant's propensity to commit crimes has not been reduced.  The need to deter criminal conduct and protect the public is acute in this case.  Without treatment for his mental health issues, Defendant will continue to commit crimes.  The danger that Defendant poses to society justifies the recommended sentence and an additional term of supervised release.

The Court must also consider whether a defendant needs any education, training, or treatment.  Defendant would benefit from participation in mental health treatment, but this does not offset the need for a lengthy prison term.  Additionally, as explained above, the Court gave Defendant a chance to turn himself around and participate in treatment on June 18, 2019, and just two days later he absconded from supervision.  The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is most often addressed by a recommended sentence within the Guidelines Range.

Importantly, the Guidelines suggest that the ***primary*** wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue.  *See* U.S.S.G. Chp. 7 Pt. A(3)(b) ("[A]t revocation the court should sanction

primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Defendant took advantage of the trust extended to him by the Court and his sister. Defendant represented to the Court that he would comply with conditions should the Court release him to live with his sister and then he egregiously violated the trust extended to him when he damaged her property and stole from her home. Thankfully no one was hurt by Defendant during the period he was without supervision, but that fact does not mitigate the severity of his conduct. A lengthy period of imprisonment is required.

A court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b)(2), (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Given the nature of Defendant's convictions pursuant to 18 U.S.C. § 922(g)(1), the maximum period of time that Defendant can be placed on supervised release following revocation is three years, reduced by the term of imprisonment imposed pursuant to 18 U.S.C. § 3583(h). Accordingly, the Court recommends that a term of twelve months of supervised release be imposed following his term of incarceration. The Court recommends that the conditions of supervised release at Docket Entry 39 be re-imposed.

The Court is aware of Defendant's status as a suspect in crimes committed outside this District. It is important to note that the Court has not considered unproven conduct in formulating its recommendation. On the contrary, the conduct here is itself violent and risky enough to justify the recommended sentence.

11

V.

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

(1) That Defendant be found guilty of the Violations #1-7;

(2) Revocation and imprisonment for a term of twenty-four months; and

(3) Twelve months of supervised release under the conditions contained in Defendant's original judgment (D.E. 39).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. D.E. 55.  Any waiver should comport with the Court's standard waiver form, available from the Clerk.  Absent waiver, the matter will be placed on Judge Boom's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute.  *See also* 18 U.S.C. § 3401(i).  As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.  Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 19th day of November, 2019.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge